## Joel Howe, Jr. *versus* Simon Handley & *al.*

The lien preserved by the second section of the act of Congress, approved August 19, 1841, called the bankrupt act, cannot exist after the debt, judgment, or other instrument, by which it was upheld, has been discharged or annulled.

But where the lien by virtue of an attachment of chattels, is discharged by proceedings in bankruptcy during the pendency of an action of replevin of the property attached, the creditor, by the provisions of Rev. St. c. 130, § 14, is entitled to receive from the officer interest, at the rate of twelve per cent. per annum, on the value of the property for so long a time as the service of his execution was delayed; to be retained for his own use, and not applied to the discharge of his judgment.

Where the purchaser of the debtor's right to the property attached, at a sale in bankruptcy, has released to the attaching officer all claim thereto, the latter cannot recover any thing on the replevin bond for the use of such debtor or his assignee, although it did not appear, that the assignee had observed all the rules prescribed in making the sale.

Under Rev. St. c. 130, in order that the replevin bond should be considered a statute bond, it is not necessary that the plaintiff in replevin should sign the bond, or that it should appear on the bond, that it was given in his behalf.

The damages recovered by the attaching officer in the action of replevin, being recovered in trust, are not conclusive upon the parties in a suit upon the replevin bond.

Where the value of the property replevied might be expected to be diminished by the use of it, and by lapse of time, it has been considered, that the obligors in the replevin bond should be bound by the value of the property named in the bond.

When the original debtor has received a discharge in bankruptcy, and his assignee has discharged all claim against the officer for the property attached, the damages to be recovered in an action upon the replevin bond, are, to be retained for the plaintiff's own use, the amount of the judgment for costs recovered in the action of replevin, with interest from the time of judgment, his reasonable expenses incurred in that action, and interest for the same time, and his reasonable expenses incurred in the suit upon the bond; and also, to recover for the use of the creditor, interest at the rate of twelve per cent. per annum on the value of the goods, as alleged in the bonds from the time of the recovery of his judgment to the time when the attachment was dissolved.

At the trial of this action many papers were read in evidence, and some depositions. After the reading was finished, the parties agreed, that the Court, upon this testimony, or so

much thereof as should be legally admissible, should be authorized to decide upon the rights of the parties, and to make up and enter judgment accordingly.

The facts, found by the Court to be admissible and material, are stated in the opinion.

The arguments were in writing.

*Ruggles,* for the plaintiff.

The property replevied, had been attached by plaintiff, a deputy sheriff, on a writ, *Call* v. *Harrington,* in which action, judgment was recovered April Term, 1842, for $558,59 debt, and costs taxed at $34,72.

Legg & Co. claiming the property attached by virtue of a mortgage from Harrington, replevied it Nov. 8, 1841, from the plaintiff, Howe. In that action judgment was rendered Sept. Term, 1843, in favor of Howe, for $104,10, and for a return of the property. On which judgment, execution issued September 29, 1843, and the officer to whom it was committed, made return September 30, of demand on Coffin & Hussey, two of the three defendants, *non est inventus,* as to Legg & Co. and *nulla bona,* and no part satisfied.

This action was brought October 16, 1843, on the replevin bond, and plaintiff claims the right to recover the value of the property replevied, and the amount of his judgment in the replevin suit. The condition of the bond is express, that the goods shall be returned, and that the party replevying, shall pay, &c. if the Court so adjudge: — and the Court did so adjudge.

The bankruptcy of Harrington cannot affect plaintiff's right to recover on the bond, nor does the proof of debt by Call, discharge these defendants from their liability to plaintiff. A poor debtor bond, will hold the obligors to strict performance, notwithstanding the bankruptcy of the debtor.

If such proof of debt is to be construed as affecting the plaintiff's right to a return, it should have been alleged and shown in bar of such judgment. The proof of debt, if it embraces the creditor's judgment, was made December, 1842; the judgment for a return was rendered September, 1843.

The judgment for a return is conclusive, and cannot now be avoided, but by due process of law.

Call and Harrington are no parties to the replevin or the replevin bond. Neither, could by bankruptcy or proof of debt, affect it.

Howe attached property of Harrington. Legg & Co. availing themselves of the forms of law, took it out of his possession wrongfully, having no title as against the attaching officer to hold it, as a trial has proved. They made a "false clamor," and are bound to restore the property to Howe, with damages for taking and detaining it. The creditor was injured, by being delayed and defeated in the collection of his debt, or a part of it. But for its having been taken out of Howe's possession, he would have realized its value by a sale on his execution, before his debtor became a bankrupt. Has Harrington's bankruptcy, or Call's proof of debt, purged the wrong done by the detention of the property? The replevin suit was pending — Call could not foresee the issue of it, nor what amount, if any, would remain, (in case the officer should have judgment for a return,) after paying the officer's charges, and expenses of that suit and of this. That there would be but little remaining, not one-fifth of the amount of his judgment, he knew. He was obliged, therefore, to prove his debt; and for the reasons stated, must prove the whole, for he could not foresee what balance would remain unsatisfied. No other course was left to him, but to present his judgment as it stood, and leave it to the assignee in bankruptcy, to protect the estate from any wrongful drafts upon it, which could easily be done through the plenary equity powers of the U. S. Court, sitting in bankruptcy. I am not aware that the fifth section has ever been construed to operate as an unqualified discharge, or payment of a judgment. On the contrary it has been held, that where a lien exists on property, by virtue of an attachment, the suit or judgment may be proceeded with, for the purpose of securing the benefit of the lien. The bankrupt act, like all other acts, should receive a reasonable interpretation.

The creditor under such circumstances, surrenders his judg-

ment, only so far as the property on which the lien exists, may be insufficient to satisfy it. In this case, the creditor's lien was preserved by statute, till 30 days after the return of the replevied property. He had a judgment, and a right to have his execution levied, whenever the property should be returned, or to have so much of his judgment satisfied out of the damages, recovered on the replevin bond, as should remain unpaid. So far, then, as his judgment is not satisfied out of the bankrupt's assets, it remains in force, so far as to entitle him to receive of the attaching officer, any balance which may remain in his hands, on which the lien takes effect, by force of the statute, c. 130.

If it were otherwise, the lien which it is the object of both the statute of the State, and the act of the United States to protect, would be defeated, and the law would be found punishing the vigilant, instead of favoring him. When any right is obtained by grant, every thing passes by the grant, necessary to the enjoyment of the right.

The creditor's claim, then, on the officer is not destroyed, and the plaintiff holds this bond, as his only indemnity against that claim, or rather as the means of answering it. Harrington's assests pay nothing. If there *were* any dividend, the officer's liability to the creditor, on a recovery on his bond, would be only for the balance remaining in his hands, after deducting his own charges and expenses in the replevin suit, and in this suit ; and under the equity powers of the U. S. Court, in bankruptcy, the creditor's dividend would be limited accordingly, or, if paid on the whole judgment, he would be held liable to the assignee for such part as he could not equitably retain, to be disposed of, by the assignee, as additional property of the bankrupt.

But the plaintiff is entitled to recover the value of the goods, not only on account of his liability to the creditor, but for his own indemnity, for his own fees and charges, and his reasonable expenses, in the action of replevin, and in this action on the bond, as the statute provides. This personal indemnity, can in no wise be affected by the proceedings in bankruptcy.

*J. S. Abbott*, for the defendants.

The property replevied, was attached on writ, *Call* v. *Harrington*, in Oct. 1841. Judgment in that suit, was recovered, April Term, 1842. Harrington was decreed a bankrupt, May 17, 1842. If by the attachment, a lien was created, and was perfected by obtaining the judgment so as not to be defeated by the Bankrupt Act; it was still competent for the creditor to waive that lien. And I contend, that he did waive it. The judgment was a debt proveable in bankruptcy; and on the 8th of Oct. 1842, Call did prove it. He claimed and proved the whole; reserving no part, to be paid by property attached. Harrington obtained his discharge. 15th of Nov. 1843. This, taken in connection with Call's having proved his judgment in bankruptcy, operated to discharge that judgment. The execution, if any ever issued on said judgment, could not be legally renewed or enforced. Call could not thereafterwards, " maintain any suit at law or in equity therefor." Bankrupt Act, § 5. And it does not appear that the execution, if any ever issued, has been renewed.

It is urged by the plaintiff's counsel, that " the judgment for a return is conclusive, and cannot now be avoided but by due process of law." The judgment, perhaps, cannot be vacated, but by legal process; but I suppose its effect may be avoided by proof *aliunde*. It would evidently be unjust to preclude the defendants from showing facts, from other sources, to excuse them for not returning the property. Suppose, for example, that after judgment for a return in the replevin action, Harrington had paid Call, his, (Call's) original judgment; surely, in such case neither Call, nor his officer for him, (Howe,) could recover in an action on the replevin bond, for the same thing. Suppose further, that Harrington, besides paying Call's judgment, had released the officer, Howe, and after the judgment for a return, had been rendered, from all claims and demands whatever, on account of said property, for what purpose, could Howe proceed with his writ on the replevin bond? Plainly, only to recover the lawful fees and charges of the officer, and the reasonable " expenses of the action of

replevin, and the action on the bond, so far as they are not re-imbursed by the costs, that may have been recovered;" and perhaps to pay the creditor, as damages, penal interest on the value of the property, from the rendition of judgment in *Call v. Harrington*, till the rendition of the judgment in the replevin suit, that is " the time the money was withheld from the creditor" or " the service of his execution, delayed by reason of the replevin." Revised Statutes, chap. 130, § 13. If, in such supposed case, Howe was permitted to recover a larger sum, say the value of the property replevied, what would he do with it ? After paying his " fees and charges," and " reasonable expenses," in the replevin suit, and in the suit on the bond, whatever additional sum he should receive, he would receive not for himself, but as trustee for the creditor or debt-or, or as an indemnity against some legal claim of the creditor or debtor against him. Now in the case supposed, it seems plain, that neither creditor nor debtor, has any claim upon the fund or against the officer.

And it seems to me, that the case at bar, is similar, as to the principles involved, and the important facts.

The judgment in the replevin suit, was for $33,00 damages, the penal interest before spoken of, and $71,10 costs. This judgment was rendered on the 22d of Sept. 1843 ; and judg-ment was also rendered for a return of the property, and rightfully ; and for this reason, and only this, viz : that at the time, Harrington had not obtained his certificate of discharge, and it could not be foreseen, whether he ever would, for Call was opposing him. He obtained his certificate of discharge on the 15th of Nov. 1843. Further, it could not then be fore-seen, that Harrington's assignee, or some one claiming under him, would not claim of the officer, the value of the property. But now it appears, that the assignee sold it to Messrs. Hus-sey & Coffiin, and they released and discharged Howe. Why should Howe be permitted in this action, to recover any thing above " the fees charges," and " reasonable expenses," before spoken of ? The fund could not be applied, on any execution of *Call* v. *Harrington*, because no such execution can be

legally issued.  Call cannot maintain any action against Howe, for any part of the fund, because he has waived his lien, created by the attachment; he has elected to prove his whole judgment, in bankruptcy, and cannot maintain any suit at law or equity for it, and *non constat*, that he has not obtained every dollar of the judgment.

Harrington cannot maintain any action against Howe, because all his right thereto, vested in his assignee.  That assignee duly sold his right to Hussey & Coffin, and they have discharged Howe, so that no one representing Harrington's rights, can maintain any action against Howe.

The question returns, why then should Howe be permitted to recover any thing more than to pay his " fees, charges, and reasonable expenses ?"   These defendants are not to be punished as wrongdoers, nor are Legg & Co., the plaintiffs in replevin, to be regarded as criminals, and visited with penalties.   They had a mortgage of said property to secure the payment of a debt.  They honestly instituted their writ of replevin.

I agree with the plaintiff's counsel, in the conclusion of his opening argument, that the plaintiff is entitled to recover enough " for his own indemnity, for his own fees and charges and his reasonable expenses in the action of replevin, and in the action on the bond, as the statute provides."  What sum would be required for this purpose, has not been shown.  The defendants in writing, offered to be defendants then, and that judgment should be awarded against them, confessing a breach of the bond ; — and that execution might be awarded against them, for $110,75, and costs.  This sum is made up of the amount of the judgment, in the replevin suit, $33, and $71,10 costs.  And interest on the whole from the rendition of the judgment, till the time of the offer to be defaulted.  This sum is more than the plaintiff is entitled to.

But if it should be still insisted that the statute prescribes the judgment on replevin bonds, and that the Court cannot depart from the statute requisitions, then I reply, that the bond in suit is not a statute replevin bond.   It is not given by the plaintiffs

in replevin, as the statute requires, but by other persons, and is therefore, a common law bond, subject to the chancery powers of the Court, and for reasons already given, the judgment should be for $18, and interest, less than the offer. The defendants claim costs, from time of offer made.

The opinion of the Court, WHITMAN C. J., SHEPLEY, TENNEY and WELLS Justices, was drawn up by

SHEPLEY J. — This suit is upon a replevin bond. The plaintiff, as a deputy of the sheriff, by virtue of a writ in favor of Moses Call against William P. Harrington, attached a horse, sleigh, harness, and two buffalo robes, as the property of Harrington. The plaintiff in that suit, recovered judgment in the month of April, 1842. Before that attachment was made, Harrington, on March 5, 1841, had conveyed the same property in mortgage to William Legg and William Knowlton, who replevied it from the officer, and the bond now in suit was made by the defendants to the plaintiff, then defendant in replevin, who in the month of September, 1843, recovered a judgment for a return of the property attached and for damages and costs. An execution issued on that judgment was delivered to another deputy of the sheriff, who, having demanded the property of the defendants, failed to obtain it, and made return of the execution on Sept. 30, 1843, in no part satisfied.

It is admitted, that the plaintiff is entitled to judgment. But it is contended in defence, that he is not entitled to recover damages to a greater amount than the sum for which they have, according to the provisions of the statute, offered to be defaulted.

1. The facts relied upon to establish this, are, first, that Harrington, upon his own petition, was decreed to be a bankrupt on May 17, 1842. That Call, on October 8, 1842, proved his judgment in bankruptcy, as a debt due from Harrington. That Harrington obtained his discharge as a bankrupt on Nov. 15, 1843.

The question thus presented is, whether the officer, should he recover in this suit for the value of the property attached, will hold it, or any part of it, for the use of Call, the creditor.

The lien preserved by the second section of the act of Congress, approved on August 19, 1841, cannot exist after the debt, judgment, or other instrument, by which it was upheld, has been discharged or annulled. The fifth section of that act declares, " and no creditor or other person coming in and proving his debt or other claim, shall be allowed to maintain any suit at law or in equity therefor, but shall be deemed thereby to have waived all right of action and suit against such bankrupt; and all proceedings already commenced, and all unsatisfied judgments already obtained thereon, shall be deemed to be surrendered thereby." The fourth section also provides that the bankrupt shall be entitled to a full discharge of all his debts. It is said, that the discharge is not absolute, but liable to be impeached for fraud or wilful concealment; and that the judgment should not therefore be considered as discharged. But the certificate is " to be deemed a full and complete discharge of all debts," " unless the same shall be impeached for some fraud or wilful concealment;" and there is no evidence presented in this case of any fraud or concealment, and it cannot be presumed. There can be no doubt, that the judgment must be regarded as surrendered and discharged. The plaintiff will not be entitled to recover any damages to be applied to satisfy that judgment. But the creditor by the provisions of the Revised Statute, c. 130, § 14, is in such cases entitled to receive from the officer interest at the rate of twelve per cent. per annum on the value of the goods for so long a time as the service of his execution was delayed, to be retained for his own use and not applied to discharge his judgment. His judgment was recovered in April, 1842. His attachment was not discharged until October 8, 1842. The lien by attachment has been uniformly considered in this State as subsisting, when the creditor has or could obtain a judgment in common form by the ordinary course of judicial proceedings. And as discharged by a failure to recov

er such a judgment, or by its discharge, or by the neglect of the creditor to enforce it. If the officer could have regained possession of the property attached, the execution of Call might have been levied upon it at any time before the attachment had been discharged. The lien upon the property was not dissolved until that time. This is not essentially at variance with the doctrine established by the decisions of other courts. *Cook's case,* 5 Law Rep. 443 ; *Ames* v. *Wentworth,* 5 Metc. 294. The plaintiff may therefore recover in this suit, the amount of damage occasioned to Call by the delay of service of his execution until October 8, 1842, his right to that amount not being affected by the discharge of his judgment, because it was not to be applied in part payment of it.

2. In the second place it is contended in defence, that the plaintiff is not entitled to recover any damages for the use of the owner of the property attached or his assignee.

The facts relied upon are, that the assignee of Harrington in bankruptcy, conveyed on December 2, 1842, all his interest in the property mortgaged to Legg and Knowlton, to Hussey and Coffin, who, on October 3, 1844, released and discharged the plaintiff from all accountability to them for it. This would seem to be sufficient to protect him against any claim made by the mortgagor or his assignee. It is objected, that it does not appear, that the assignee in bankruptcy made a conveyance of the property according to the rules prescribed by the court authorizing the sale. It does not appear, that he did not. The property passed by operation of law to him, and he could make no claim upon the plaintiff for it after having made sale of it to others. The mortgagees do not appear to have discharged the plaintiff from accountability to them. Nor does their title to the property appear to have been discharged or surrendered. It may be valid as against Harrington and his assigns, while it was decided to be invalid as against an attaching creditor. The answer is, the officer is seeking to recover damages against them in effect, though not in form, for they are not parties to this suit. The suit is against those, who must be considered to have given this bond on their account

and for their benefit. The plaintiff should not therefore be allowed to recover damages from the agents only to restore the amount recovered to their principals.

3. It is contended, that this is not a statute bond, and that the plaintiff can recover only the actual damages proved, and not the damages provided by the statute. It was made on Nov. 8, 1841, since the Revised Statutes were in force. By the tenth section of c. 130, the officer is authorized to " take from the plaintiff or some one in his behalf a bond to the defendant with sufficient sureties." It must be presumed, that the officer proceeded legally, in the absence of proof that he did not, and that this bond was taken in behalf of the plaintiffs in replevin. It must therefore be regarded as a statute bond; and the damages must be assessed accordingly.

4. The damages recovered in the action of replevin, by the present plaintiff, being recovered in trust, are not conclusive upon the parties in this suit. The service of the creditor's execution may have been delayed long after the recovery of that judgment, and he may therefore be entitled to greater damages. Ch. 130, § 12. Or a part or the whole of his debt may have been discharged since the recovery of the judgment, and the officer is only to recover to his use and pay to him so much of his judgment, as shall remain unpaid. Ch. 130, § 13.

5. The defendant in replevin is not concluded by the value of the property named in the replevin bond. Nor are the obligors in all cases. But in cases like the present, in which the value of the property might be expected to be diminished by the use of it, and by the lapse of time, it has been considered, that the obligors should be bound by the value named in their bond. *Melvin* v. *Winslow*, 1 Fairf. 397; *Swift* v. *Barnes*, 16 Pick. 194; *Parker* v. *Simonds*, 8 Metc. 205.

The plaintiff will be entitled to recover the amount of the judgment for costs recovered in the action of replevin, with interest thereon from the time of judgment. His reasonable expenses incurred in that action with interest thereon from the same time. His reasonable expenses incurred in this suit upon

the bond. These sums he will be entitled to recover for his own use.

He will also be entitled to recover for the use of the creditor, interest at the rate of twelve per cent. per annum on the value of the goods, as alleged in the bond, from the time of the recovery of his judgment to the time when the attachment was discharged on Oct. 8, 1842.

When the expenses to be allowed to the plaintiff have been ascertained, by casting the interest upon the items as before stated to the time of the offer to be defaulted, it will be perceived, whether the amount thus offered was sufficient, and the costs of this suit will be thereby determined.

*Defendants to be defaulted, and to be heard in damages.*